**BALL CORPORATION, Plaintiff–Appellant/Cross–Appellee,**

**v.**

**XIDEX CORPORATION and Dysan Corporation, Defendants–Appellees/Cross–Appellants.**

**Nos. 89–1325, 89–1348.**

United States Court of Appeals, Tenth Circuit.

June 18, 1992.

Charles F. Brega, Brega & Winters P.C., Denver, Colo. (Stuart N. Bennett and Mark J. Appleton, Brega & Winters P.C., Denver, Colo., Clyde F. Willian and Richard A. Kaplan, Willian Brinks Olds Hofer Gilson & Lione, Chicago, Ill., and J. Stephen McGuire, Purcell & McGuire, Englewood, Colo., with him, on the briefs), for plaintiff-appellant, cross-appellee.

William E. Murane, Holland & Hart, Denver, Colo. (Ralph F. Crandell, Holland & Hart, Denver, Colo., Warren P. Kujawa and Henry C. Bunsow, Townsend & Townsend, San Francisco, Cal., with him, on the briefs), for defendants-appellees, cross-appellants.

Before McKAY, Chief Judge, ALDISERT,[1] and McWILLIAMS, Circuit Judges.

McKAY, Chief Judge.

Ball Corporation, a research and development company, brought this tort action against Xidex Corporation and Dysan Cor-

---

**1.** Honorable Ruggero J. Aldisert, United States Senior Circuit Judge for United States Court of Appeals, Third Circuit, sitting by designation.

poration (collectively Xidex),[2] manufacturers of computer disks. The complaint alleges that Xidex damaged Ball by making false statements and withholding material evidence during a reexamination proceeding in the United States Patent and Trademark Office (PTO). Ball alleges that Xidex' actions caused the PTO to revoke lucrative patent claims held by Ball for fourteen years. After trial on the merits, the district court dismissed Ball's action. Ball now appeals and Xidex cross-appeals.

The dispute between the parties arose over a patented method of lubricating magnetic storage devices such as computer memory disks, drums, and tapes. United States Patent No. 3,778,308 (Roller patent) issued to inventors Kent G. Roller, George H. Alhorn, and Richard E. Brown in December of 1973 and was assigned to Ball. The Roller patent describes, *inter alia*, the application of a lubricant known as perfluoroalkyl polyether (PFA) over a substrate of magnetic material. Since the Roller patent was issued, PFA has become the most widely used lubricant in the computer disk industry. Xidex has used PFA as a lubricant since 1978 without a license from Ball.

The parties hold different views as to what the claimed invention is. Xidex argues that thickness of the PFA coating is a material element and that the patent only protects products that fall within the thickness range specified in the patent claim. Xidex points out that the patent application was initially rejected and that the patent issued only after the applicants specified a thickness range for the PFA coating.[3] Ball argues against a highly technical reading of the patent, urging that the claimed invention is simply PFA as applied in a thin coating to magnetic memory devices. These divergent views of the claimed invention lead the parties to dispute whether the PFA coating on Xidex disks falls within the Roller patent claims.

In 1986, Ball filed an action against Xidex claiming that Xidex disks did fall within the thickness specifications of the Roller patent and that their unlicensed manufacture by Xidex constituted patent infringement.[4] Xidex conducted discovery in the patent infringement case. To protect proprietary information from customers of Xidex that were not parties to the suit, the trial court declared certain materials confidential. Xidex later produced documents that revealed sales information and kept them under the court's protective order. Xidex also designated certain depositions as confidential.

After conducting substantial discovery in the infringement action, Xidex instituted a reexamination proceeding in the PTO, claiming that the Roller process was obvious in light of prior art and therefore should never have been patented. The patent examiner agreed with Xidex, citing specific prior art that rendered the Roller process obvious. Ball appealed the PTO's decision to invalidate certain claims of the Roller patent, but the PTO affirmed its earlier decision. The evidence that Xidex had designated as confidential in the infringement action was relevant to the issue of commercial success, a factor which supports a finding of patentability. This evidence of commercial success might have helped Ball in the reexamination proceeding, but it was never introduced in that setting. Ball could not introduce it because of Xidex' protective order, and Xidex refused to introduce it. The district court found that the PTO's partial invalidation of the Roller patent had mooted the patent infringement action, and so the district court dismissed that suit without prejudice.

**2.** Dysan Corporation was a wholly-owned subsidiary of Xidex which was merged into Xidex after this action accrued.

**3.** As issued, the patent specifies that the PFA coating has "a thickness between about 3 microinches and 50 microinches." U.S. Pat. No. 3,778,308 at 4 (Dec. 11, 1973).

**4.** The infringement suit was before the same district court from which this appeal is now taken.

The present tort action focuses on the conduct of Xidex' counsel during the reexamination proceeding. At issue is the legal significance of the following statement by Warren P. Kujawa to the PTO:

[Ball] would have the examiner believe that the invention enjoys demonstrated commercial success, citing the Loran Declaration in support. Again ignoring the questionable weight to be accorded the Loran opinions, there are *no facts which establish that any disk sold using the perfluoroalkyl polyether as a lubricant is covered by the subject patent. In addition, there is no evidence tending to establish that the specific lubricant is responsible for the sales of the product.* It should be noted that the patentee does not manufacture magnetic disks and thus has no first hand knowledge of the market. Accordingly, the patentee's commercial success contentions should be entirely disregarded in assessing the non-obviousness.

(District Ct.Mem., Sept. 21, 1989, at 19 (quoted therein with emphasis added)). Citing this language and Mr. Kujawa's knowledge of the confidential materials discovered in the infringement action, Ball claims that Mr. Kujawa knowingly made false statements to the PTO, and withheld and prevented presentation of material evidence. Ball further alleges that Mr. Kujawa's actions damaged Ball by causing the PTO to invalidate certain patent claims in the reexamination proceeding. Xidex argues that certain non-adversarial aspects of the reexamination setting excused Mr. Kujawa from any duty of full disclosure to the PTO. Xidex also claims immunity from suit for Mr. Kujawa's statements in the reexamination proceeding. Finally, Xidex claims that Ball has not established that Mr. Kujawa's statements caused damage to Ball.

Ball brings its allegations under five separate tort claims: (1) patent libel, (2) product disparagement, (3) intentional interference with protected property interests, (4) intentional interference with prospective business relationships, and (5) unfair competition. After a full trial to the court on the issue of liability regarding these claims, the district court made extensive findings of fact and conclusions of law. The court first determined that under the First Amendment and federal case law, Xidex was entitled to qualified immunity for statements made in the PTO proceeding unless they were made with actual malice. The district court found that Mr. Kujawa had acted not with actual malice but with reasonable beliefs regarding the materiality of thickness specifications to the patent claims. The court also found that Ball had failed to prove the causation element of each tort. On these two bases, the district court dismissed all of Ball's claims against Xidex.

Ball challenges the dismissal, arguing that the district court erred in applying qualified immunity to Mr. Kujawa's statements to the PTO. Ball also argues that Xidex waived the immunity defense by failing to raise it in its pleadings. Xidex cross-appeals, arguing that it is entitled to absolute immunity for Mr. Kujawa's statements in the PTO proceedings. We affirm the dismissal of the claims, though on different grounds from those set forth by the district court regarding immunity.

I.

■ Ball first argues that Xidex waived the immunity defense by not raising it in its answer as required by Fed.R.Civ.P. 8(c). Although Xidex did not argue immunity as an affirmative defense in the pleadings, Xidex did file a motion for partial summary judgment three months prior to trial, basing its argument in part on immunity. Xidex also argued for immunity in its supplemental pretrial statement. Ball addressed immunity in responding to both the motion for partial summary judgment and the pretrial statement.

This court has held that "[t]he purpose behind rule 8(c) [is] that of putting 'plaintiff on notice well in advance of trial that

defendant intends to present a defense in the nature of an avoidance....'" *Marino v. Otis Eng'g Corp.*, 839 F.2d 1404, 1408 (10th Cir.1988). In *Marino*, we held that the purpose of rule 8(c) was served when the plaintiff .had notice at least three months prior to trial that the defendant intended to raise that affirmative defense, even though the defendant had failed to plead that affirmative defense. *See id.; see also Parker v. Title and Trust Co.*, 233 F.2d 505, 515–16 (9th Cir.1956) (where privileged character of language used is obvious, party claiming privilege need not plead privilege affirmatively). In the current case, Ball had notice at least three months prior to trial that Xidex would claim immunity, and the issue was therefore properly litigated at trial.

## II.

The district court held that Xidex' statements in the PTO proceeding were protected by qualified immunity. This is a question of law which we review *de novo*. *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263, 1266 (10th Cir.1988).

The district court adopted the analysis of qualified immunity found in *McDonald v. Smith*, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985), which involved an action for libel arising out of letters written to the President of the United States. The Supreme Court resolved the question of immunity in light of the First Amendment's Petition Clause, holding that the author of the letters had qualified immunity for his statements. The district court erred in applying the *McDonald* analysis to the current case, which involves immunity not for actions in petitioning the government but rather in judicial or quasi-judicial proceedings.

This court recently considered the issue of absolute immunity for statements made by a private lawyer during a judicial proceeding. *Robinson v. Volkswagenwerk AG*, 940 F.2d 1369 (10th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 1160, 117

L.Ed.2d 408 (1992). We concluded that Supreme Court precedent supports absolute immunity for private lawyers on defamation claims but that immunity cannot be extended to allegations of fraud. *Id.* at 1371–74. The question that arises here is whether the *Robinson* analysis applies to PTO proceedings. We hold that it does.

"Fearless administration of justice requires ... that an attorney have the privilege of representing his [or her] client's interests, without the constant menace of claims for libel." *Bleecker v. Drury*, 149 F.2d 770, 771 (2d Cir.1945). The integrity of our adversarial system would be compromised if advocates were forced to steer their course between zealousness on the one hand, and fear of liability for damages on the other. Absolute immunity from defamation claims not only frees counsel from the harassment and intimidation of threatened lawsuits but also blocks a party that loses in one forum from seeking retaliation in another. At a time when judicial resources are stretched to their limits, absolute immunity is an important brake on runaway litigation.

Other courts, citing these policy concerns, have extended absolute immunity from defamation claims to quasi-judicial proceedings conducted by administrative bodies. *See, e.g., Bleecker v. Drury*, 149 F.2d 770, 771–72 (2d Cir.1945) (proceedings before state Industrial Board); *Arneja v. Gildar*, 541 A.2d 621, 623 (D.C.1988) (hearing before Rental Accommodation Office); *Mazanderan v. McGranery*, 490 A.2d 180, 181–82 (D.C.1984) (communication with Public Vehicles Division, D.C. Dep't of Mass Transportation). These policy considerations are implicated also in the PTO setting, which is quasi-judicial in nature. *United States v. American Bell Tel. Co.*, 128 U.S. 315, 363, 9 S.Ct. 90, 95, 32 L.Ed. 450 (1888) (patents issue through quasi-judicial proceedings); *Western Elec. Co. v. Piezo Technology, Inc.*, 860 F.2d 428, 431 (Fed.Cir.1988) ("Patent examiners are quasi-judicial officials.") (citation omitted). We

hold, therefore, that private lawyers are entitled to absolute immunity from charges of defamation based on statements in the quasi-judicial setting of PTO proceedings. Thus we affirm the dismissal of Ball's claims of patent libel and product disparagement, because we hold that Xidex is immune from these causes of action that sound in defamation.

### III.

Our holding on absolute immunity represents a license for counsel to speak freely in PTO proceedings; it is not a license to commit intentional torts. Thus we reach the merits of Ball's remaining allegations against Xidex: intentional interference with protected property interests, intentional interference with prospective business relationships, and unfair competition. At the heart of each claim is the issue of whether Mr. Kujawa intentionally made false statements to the PTO.

Traditional tort law would require Ball to show that Mr. Kujawa's statements were made deliberately or with knowledge of their falsity. Ball argues on appeal for a lower standard, citing a case that affirmed a trial court's decision not to enforce a patent where the patent owner made representations to the PTO with recklessness or gross negligence as to their truth. *True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 502 (10th Cir.1979). Ball bolsters its argument for applying the gross negligence standard in the reexamination setting by invoking the duty of candor imposed on some participants in PTO proceedings by both regulation and case law. *See* 37 C.F.R. § 1.56(a) (1990); 37 C.F.R. § 1.555(a); *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 818, 65 S.Ct. 993, 999, 89 L.Ed. 1381 (1945). If, as Ball argues, the duty of candor modifies the traditional standard for liability, then Ball can prevail by showing that Xidex acted with recklessness or gross negligence in the reexamination proceeding.

The district court focused not on recklessness or gross negligence, but on the higher standard of actual malice, which it defined as knowledge of falsehood or reckless disregard for the truth. The court found that Ball had failed to prove by clear and convincing evidence that Mr. Kujawa had acted with malice. The court went further in its findings of fact and concluded that Mr. Kujawa had a reasonable basis for believing that Xidex' products did not infringe the Roller patent. The plain language of this finding—that Mr. Kujawa reached reasonable conclusions and expressed them to the PTO—is incompatible with a finding of recklessness or gross negligence as to the truth.

The district court was apparently persuaded that Mr. Kujawa's statements arose from the parties' consistently differing views of exactly what was the claimed invention. Ball has contended since filing the infringement case that the claimed invention is the lubricant PFA as applied in a thin coating to magnetic memory devices. Xidex has contended, in contrast, that the invention is limited to PFA as applied in a specific range of thicknesses. The district court, with ample opportunity at trial to observe and question Mr. Kujawa, found that he "had a reasonable basis for concluding that these thickness differences were significant" in determining that Xidex' products did not infringe the Roller patent. (District Ct.Mem. at 26.) The court further found that Mr. Kujawa's statements in the PTO reexamination were based on this reasonable analysis of the patent claims.

A district court's findings of fact can be disturbed only if the record on appeal reveals them to be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The same standard of review applies to the district court's determination of a witness' credibility. *Id.* at 575, 105 S.Ct. at 1512; *GTE Corp. v. Williams*, 904 F.2d 536, 541–42 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 557, 112 L.Ed.2d 564 (1990).

Mr. Kujawa testified at trial that he understood Xidex disks to fall outside of

the Roller patent and that he therefore believed there to be no nexus between the commercial success of Xidex disks and the Roller patent. (Tr. Vol. IV at 114–16.) The district court found this testimony credible. The district court also examined a deposition ("Lohoff deposition") which had been designated as confidential in the infringement action and was not introduced in the reexamination proceeding. Because Mr. Kujawa had been present at the Lohoff deposition, the contents of the document informed the court as to what Mr. Kujawa knew when he made his allegedly false statements to the PTO.[5] The district court concluded that the Lohoff deposition provided Mr. Kujawa with reasonable support for his belief that Xidex' products did not infringe the Roller patent. As the district court recognized, "[r]egardless of the ultimate merit of [Mr. Kujawa's] conclusions, the evidence does not show that Mr. Kujawa acted in reckless disregard for the truth." (District Ct.Mem. at 27.) After thorough review of the detailed and technical record in this case, we conclude that the district court's findings are amply supported by the evidence and are not clearly erroneous.

Because we leave the district court's findings of fact undisturbed, and because these findings are incompatible with allegations of recklessness or gross negligence, the lowest standards of intent urged by Ball, we conclude that the district court correctly dismissed Ball's claims of intentional interference with protected property interests and intentional interference with prospective business relationships.[6] We affirm the district court's dismissal of these claims based on finding lack of the requisite intent.

## IV.

Finally, Ball alleges that Xidex engaged in unfair competition through withholding and misrepresentation of information before the PTO. Ball argues that Xidex breached its duty of candor to the PTO and thereby also breached applicable standards of commercial practice. Ball asserts that if certain information had been before the PTO in the reexamination proceedings, the Roller patent claims would not have been invalidated. Ball specifically argues that the withheld information would have supplied the nexus between the claimed invention and commercial success, a nexus that Ball had the burden of proving to the PTO. In short, Ball argues that Mr. Kujawa's statements to the PTO caused damage to Ball through invalidation of certain Roller patent claims.

■ A patent reexamination is a streamlined proceeding in which the PTO inquires whether an invention was originally unpatentable as obvious in light of prior art.[7] 35 U.S.C. §§ 301–02 (1988). A reexamination proceeding has only limited *inter partes* attributes. *In re Opprecht*, 868 F.2d 1264, 1265 (Fed.Cir.1989). Neither the patent examiner nor the patent owner has a right to discovery or the power to subpoena for a reexamination proceeding. In this case, then, neither the examiner nor Ball

---

5. In the deposition, chemist Allen Lohoff compared PFA coatings on disks from different companies using the measuring process described in the Roller patent. He concluded that the coatings' thicknesses were "far below the thickness disclosed in the patent." (District Ct. Mem. at 26 (citation omitted).) This deposition therefore addressed both thickness levels and differences in measuring techniques that had been at issue during the trial.

6. We need not reach the question, raised here by Ball, of whether recklessness or gross negligence would be the proper standards for liability in the PTO setting.

7. The requester may submit to the PTO "prior art consisting of patents or printed publications which that person believes to have a bearing on the patentability of any claim of a particular patent." 35 U.S.C. § 301. If the patent examiner determines that the requester has successfully raised a "substantial new question of patentability," 35 U.S.C. § 303(a), the examiner must notify the patent owner. 35 U.S.C. § 303(b). The patent owner may file a statement for consideration in the reexamination. 35 U.S.C. § 304. The requester then may file a reply to the statement of the patent owner. *Id.*

could bring before the PTO the information that Xidex had designated as confidential.

The district court held that counsel involved with PTO reexamination proceedings, both counsel defending patentability and counsel challenging it, "have an uncompromising duty of candor" to the PTO. (District Ct.Mem. at 28.) Furthermore, the district court held, the reexamination requester has "the duty to correct misrepresentations in the request or reply upon discovery of evidence that could not otherwise be presented to the examiner." *Id.* at 29. While evidence that a party has breached a duty to the PTO would not lead directly to civil liability, the district court continued, it would "present persuasive evidence in unfair competition cases to define the applicable standards of 'honest industrial and commercial practice' to which liability may attach." *Id.* at 30 (citations omitted).

■ The "uncompromising duty of candor" described by the district court is set out at 37 C.F.R. § 1.555 (1991) as "[a] duty of candor and good faith" in reexamination proceedings. The duty requires that a patent owner, or attorney or agent of the owner, bring materials to the attention of the PTO as they "are aware, or become aware" of them. We hold that the duty of candor and good faith in the reexamination proceeding applies to both the requester and the patent defender, as well as to their respective attorneys and agents. We emphasize that the duty implicitly contains an element of intent: The duty applies when a participant in the proceedings is aware, or becomes aware, of information that is material to the PTO's determination of patentability. As the district court noted, this duty includes an obligation to correct misrepresentations to the PTO. The result in this case is that Mr. Kujawa, as attorney to the reexamination requester, had a duty to disclose to the PTO all evidence material to its determination of patentability and a duty to correct misrepresentations as he became aware of them.

The district court discussed Mr. Kujawa's knowledge of certain confidential information without specifically finding whether or not he breached the duty of candor and good faith. As described above, the district court made factual findings that Mr. Kujawa believed Xidex' products were commercially successful without infringing the Roller patent, and that this belief was reasonable. Viewed in light of Mr. Kujawa's reasonable belief, the information in question did not support patentability, and it also was not material to the PTO proceedings. Mr. Kujawa lacked awareness of the information's materiality, and he therefore did not have the requisite intent to breach his duty to the PTO. Although under the district court's reasoning a breach of the duty could be persuasive evidence of unfair competition, the absence of a breach does not resolve the issue. We therefore proceed, as the district court did, to the issue of causation.

■ The district court made a clear finding that Ball "has failed to demonstrate the causation necessary to make failure to correct the record before the PTO an actionable tort." (District Ct.Mem. at 31.) The court studied the PTO actions that rejected the patent claims, examined the confidential information in question, and listened to the testimony of Ball's expert witness, a former Commissioner of the PTO, before finding that the withheld information was not a substantial factor in the PTO's decision to invalidate the claims. We can disturb this finding of fact only if we find it to be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); *GTE Corp. v. Williams*, 904 F.2d 536, 541–42 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 557, 112 L.Ed.2d 564 (1990).

The PTO actions, both the original decision and the decision upon reconsideration, invalidate the patent claims as obvious in light of prior art, and they discuss Ball's commercial success arguments only secondarily. The PTO actions thus assign Ball a difficult task in the present litigation: Ball must show that even with exam-

ples of prior art before him, the patent examiner would not have invalidated the patent claims if he had been able to review the confidential information.

The district court reviewed the confidential information and concluded that "the general import of [certain] testimony was readily before the examiner," and submission of a confidential deposition "would not have provided evidence to alter the examiner's analysis...." (District Ct.Mem. at 31.) The court concluded that certain sales figures and customer specifications, also designated as confidential, would at most have demonstrated commercial success of some products without proving a nexus of this success with the claimed invention. Testimony through deposition for Xidex and from Ball's own expert witness on cross-examination suggests that disks were commercially successful with a PFA coating that was below the thickness range specified in the patent claims. (Tr. Vol. VI at 301–05.) Evidence of commercial success that was arguably independent of the claimed invention would certainly not have persuaded the patent examiner to uphold the challenged patent claims. This is particularly true where the examiner had before him inventions that he had already determined to be prior art rendering the claimed invention obvious. We find ample support in the record for the district court's findings of fact on Ball's failure to prove that Mr. Kujawa's statements damaged Ball. We therefore affirm the district court's decision to dismiss Ball's claim of unfair competition for failure to prove causation.

AFFIRMED.