**ZDENEK MAREK D/B/A ZINC,**
**Plaintiff pro se,**

v.

**OLD NAVY (APPAREL) INC. and**
**Old Navy Inc., Defendants.**

**Zdenek Marek d/b/a Zinc,**
**Plaintiff pro se,**

v.

**Old Navy (Apparel) Inc. and Old Navy Inc., Defendants.**

**Nos. 03 Civ. 4876(JES),**
**04 Civ. 2356(JES).**

**United States District Court,**
**S.D. New York.**

**Dec. 15, 2004.**

Zdenek Marek, d/b/a/ Zinc, New York City, Plaintiff pro se.

Fross Zelnick Lehrman & Zissu, P.C. (Barbara A. Salomon, Jessica Mann, Zoe Hilden, of counsel), New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Plaintiff *pro se* Zdenek Marek ("plaintiff") brings the above-captioned actions against defendants Old Navy (Apparel) Inc. and Old Navy Inc. ("defendants") for tortious interference with prospective business relationship, injurious falsehood, and libel *per se.* Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss both actions due to plaintiff's failure to state a claim. For the reasons that follow, defendants' motions to dismiss are granted.

## BACKGROUND

Plaintiff is in the business of manufacturing and selling clothes in New York City. *See* Amended Complaint for Libel *Per Se,* dated May 22, 2004 (the *"2004 Complaint"* or *"2004 Compl."*) ¶ 7. Some time in 1998, plaintiff developed the trademark OLD ARMY, which he began using in manufacturing and advertising. *See* Amended Complaint, dated September 27, 2003 (the *"2003 Complaint"* or *"2003 Compl."*) ¶ 3. Plaintiff registered his mark OLD ARMY with the New York State Department of State, and also registered OLD ARMY as a business with the City of New York. *See* 2003 Compl. ¶ 4.

Plaintiff received his first order for OLD ARMY merchandise on September 17, 1998. *See* 2003 Compl. ¶ 6; 2004 Compl. ¶ 10. In addition to pursuing customers interested in purchasing OLD ARMY merchandise, plaintiff also concentrated his efforts on licensing and even selling the OLD ARMY mark. *See* 2003 Compl. ¶¶ 9–12. To this end, plaintiff placed several advertisements in trade newspapers and, as a result, received numerous inquiries concerning the licensing of the OLD ARMY mark. *See* 2003 Compl. ¶ 11. In the 2003 Complaint plaintiff identifies by name three parties that were seriously considering licensing the OLD ARMY mark. *Id.* ¶ 12.[1] Furthermore, plaintiff

---

1. Plaintiff identifies the interested parties as TGS Corp., G & G Corp., and "a large T-shirt converter from the South whose name Plaintiff believes was Hollywood T." 2003 Compl.

¶ 12. Plaintiff's sales representative also discussed manufacturing and licensing with the Kmart Corporation (*"Kmart"*), although plaintiff does not allege that Kmart expressed

alleges that two of the interested prospective licensees orally agreed to enter into contracts for the licensing of the OLD ARMY mark. *Id.* ¶ 13. The prospective licensees informed plaintiff, however, that they would not enter into formal licensing agreements with him unless the OLD ARMY mark was federally registered. *Id.* ¶ 16.

On March 8, 1999, plaintiff applied to register the OLD ARMY mark with the United States Patent and Trademark Office (the *"PTO"*) for various categories of clothing, footwear, and headgear. *See* 2003 Compl. ¶ 17, Exhibit (*"Exh."*) D; 2004 Compl. ¶ 12, Exh. C. In accordance with its registration procedures, the PTO published the OLD ARMY mark for opposition in the PTO's Official Gazette on January 4, 2000. *See* 2003 Compl., Exh. E. It was at this point that defendants in these actions first mounted their challenge to the registration of the OLD ARMY mark.

Defendant Old Navy (Apparel) Inc. is the owner of the federally registered trademark OLD NAVY, which it licenses to defendant Old Navy Inc. for use in connection with retail stores, clothing, accessories, and other products. *See* 2003 Compl., Exh. B ¶¶ 1–2; 2004 Compl., Exh. B ¶¶ 1–2. On May 1, 2000, after applying for and obtaining three successive extensions of time, defendants filed a Notice of Opposition with the PTO's Trademark Trial and Appeal Board (the *"Board"*), opposing registration of the OLD ARMY mark on the grounds that there was a likelihood of confusion between the goods and services provided by defendants under the OLD NAVY mark and the goods provided by plaintiff under the OLD ARMY mark. *See* 2003 Compl., Exh. G. Defendants, however, failed to timely submit a brief in support of their opposition. *See* 2003 Compl. ¶ 31. Apparently, both the attorney and the legal assistant handling this matter before the Board left defendants' employment in early 2001, and the information concerning the deadlines set by the Board for the filing of defendants' opposition brief was inadvertently lost. *See* 2003 Compl., Exh. I, at 1–2. The Board eventually concluded that defendants' failure to submit a timely brief could not be excused. Defendants' opposition was dismissed by the Board with prejudice, *see* 2003 Compl., Exh. J; 2004 Compl., Exh. D, and plaintiff's OLD ARMY mark was registered on January 28, 2003. *See* 2003 Compl., Exh. K; 2004 Compl., Exh. E.

On March 26, 2003, defendants (proceeding swiftly this time) filed a Petition for Cancellation of the OLD ARMY mark pursuant to 15 U.S.C. § 1064(3) (the *"Cancellation Petition"*) on the grounds that the mark's registration was fraudulently obtained. *See* 2003 Compl., Exh. B ¶¶ 6–7; 2004 Compl., Exh. B ¶¶ 6–7. Specifically, defendants alleged in the Cancellation Petition that the statement made by plaintiff in the registration application he submitted to the PTO that the OLD ARMY mark was first used in commerce on September 17, 1998 was false because, according to defendants "there ha[d] been little or no use of the OLD ARMY mark." 2003 Compl., Exh. B ¶ 6; 2004 Compl., Exh. B ¶ 6. Defendants further contended in their Cancellation Petition that while plaintiff "purportedly began preparations to manufacture a T-shirt, . . . there is no evidence that an OLD ARMY T-shirt was ever actually manufactured or sold in commerce." *Id.* Finally, defendants also alleged that plaintiff made no commercial use of the OLD ARMY mark "in connection with the other apparel and footwear set forth in the registration." *Id.* To the Court's knowledge, the cancellation proceeding com-

any interest in the OLD ARMY mark. *Id.* ¶ 10.

menced by defendants before the PTO (the *"Cancellation Proceeding"*) is still ongoing as of this date.

On June 2, 2003, plaintiff filed a complaint against defendants in New York State Supreme Court (the *"2003 Action"*) asserting claims for tortious interference with prospective economic advantage, libel *per se,* and punitive damages. Defendants removed the 2003 Action to this Court. Ruling on defendants' motion to dismiss the 2003 Action, the Court dismissed plaintiff's original complaint and granted plaintiff leave to replead. *See* Court's Order dated September 29, 2003. On October 17, 2003 plaintiff filed the 2003 Complaint, asserting claims for "intentional interference with prospective contractual relationships, prospective pre-contractual relationships and prospective business relationship in the alternative" and injurious falsehood. *See* 2003 Compl. ¶¶ 2–59, ¶¶ 60–68. While defendants' motion to dismiss the 2003 Complaint was pending before the Court, plaintiff commenced a second action against defendants in this Court, this time asserting a single claim of libel *per se* based on the statements made by defendants in the Cancellation Proceeding. *See* 2004 Compl. ¶¶ 17–25.

## DISCUSSION

In considering a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508 n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.,* 369 F.3d 212, 217 (2d Cir.2004) (citing *Gryl v. Shire Pharm. Group PLC,* 298 F.3d 136, 140 (2d Cir. 2002)). The Court's function is "not to

weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding a Rule 12(b)(6) motion the Court "may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir.2001) (alteration in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)); *see also* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Furthermore, the Court will "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), while holding them "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*).

I. *Plaintiff's Claim for Tortious Interference with Prospective Business Relationship.*

Plaintiff alleges that defendants tortiously interfered with his efforts to license or sell the OLD ARMY mark, at first by fraudulently delaying the opposition proceeding before the PTO, and later by initiating the Cancellation Proceeding. Under New York law, to state a claim for tortious interference with prospective

business relations plaintiff must allege the following four elements: (1) a business relationship between plaintiff and a third party; (2) that defendants, *having knowledge of such relationship*, intentionally interfered with it; (3) that defendants acted with the sole purpose of harming the plaintiff or, failing that level of malice, used dishonest, unfair, or improper means; and (4) injury to the business relationship. *See Goldhirsh Group, Inc. v. Alpert*, 107 F.3d 105, 108–09 (2d Cir.1997) (citing *Purgess v. Sharrock*, 33 F.3d 134, 141 (2d Cir.1994)); *see also Nadel v. Play–By–Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir.2000). Furthermore, plaintiff must allege that defendants directly interfered with the business relationship by directing "some activities towards the third party and convinc[ing] the third party not to enter into a business relationship with the plaintiff." *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F.Supp. 477, 482 (S.D.N.Y.1997) (citing *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir.1995)); *see also Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F.Supp.2d 157, 167 (S.D.N.Y.1998). It is due to this utter failure to allege any knowledge on the part of defendants of any business relationships with which they allegedly interfered that plaintiff's claim must fail.

As stated above, the 2003 Complaint contains allegations that three identified parties seriously contemplated the licensing of the OLD ARMY mark, and that two of them orally agreed to enter into licensing arrangements with plaintiff.[2] These allegations, however, simply cannot fill the glaring void in the 2003 Complaint with respect to any knowledge defendants may have had regarding plaintiff's conversations or dealings with any third parties. Simply put, plaintiff fails to identify even one prospective licensee or interested purchaser of the OLD ARMY mark of whose existence or interest in the mark defendants may have been aware. Nor does plaintiff even vaguely suggest that defendants, having knowledge of any interested third parties, took any actions with the intent of interfering with plaintiff's business relationships with such interested third parties.[3]

While failing to identify any instances in which defendants may have become aware of plaintiff's relationships with any third parties interested in the OLD ARMY mark, plaintiff does allege that one of the attorneys he approached in connection with potential licensing of the OLD ARMY mark declined to represent him and gave him a "definite implied impression that the law office was somehow involved with [defendants or their parent corporation, GAP.]" 2003 Compl. ¶ 15. Based on his definite implied impression, plaintiff alleges that the attorney, friendly to defendants, informed them of plaintiff's plans to license or sell the OLD ARMY mark. *Id.* ¶ 19. While taking, as the Court must, plaintiff's allegations that defendants learned of his licensing plans from the "friendly" attorney as true, the Court is

---

**2.** Plaintiff does not specify which of the three interested parties made oral commitments to enter into licensing agreements with him.

**3.** Exhibit Q to the 2003 Complaint contains letters, addressed to plaintiff, from Kmart, Levi Strauss & Co. *("Levi Strauss")*, Target Brands, Inc. *("Target")*, and H & M Hennes & Mauritz AB *("H & M")*, each declining to enter into a business relationship with plaintiff with respect to the OLD ARMY mark. *See* 2003 Compl., Exh. Q. Nowhere in the 2003 Complaint does plaintiff allege that defendants were even aware of his dealings with Kmart, Levi Strauss, Target, or H & M, not to mention took any steps to actively interfere with any potential transactions. Furthermore, none of the letters addressed to plaintiff contains any references to defendants or any actions undertaken by them.

nevertheless hard pressed to find any allegations in the 2003 Complaint that defendants, by virtue of said attorney's questionable conduct, learned the identities of any third parties contemplating entering into transactions with plaintiff. In fact, plaintiff does not even allege that he revealed the identities of any such third parties to the unscrupulous attorney.

Given the complete lack of any allegations that defendants had knowledge of any specific third parties interested in purchasing or licensing the OLD ARMY mark from plaintiff or, having obtained such knowledge, directed any activities towards such third parties or acted to interfere in any manner with their prospective business relationships with plaintiff, the Court has no choice but to dismiss plaintiff's claim for tortious interference with prospective business relationship.

II. *Plaintiff's Claims for Injurious Falsehood and Libel Per Se.*

■■■■ Plaintiff's claims for injurious falsehood[4] and libel *per se*[5] must also be dismissed. Both claims are grounded in the statements defendants made in the Cancellation Petition, wherein they sought to cancel the registration of the OLD ARMY mark on the grounds that certain statements made by plaintiff in the registration application with respect to the

mark's use in commerce were false, thus rendering the registration fraudulent. *See* 2003 Compl. ¶¶ 42, 52, 55; 2004 Compl. ¶¶ 17–22.

■■■■ It is a well established principle of New York law that statements made in judicial and quasi-judicial proceedings are privileged and may not be actionable so long as they are pertinent to the controversy. *See, e.g., Bleecker v. Drury,* 149 F.2d 770, 771 (2d Cir.1945) ("Fearless administration of justice requires, among other things, that an attorney have the privilege of representing his client's interests, without the constant menace of claims for libel."); *Anonymous v. Trenkman,* 48 F.2d 571, 573–74 (2d Cir.1931) (stating that "counsel are privileged with respect to any statements, oral or written, made in judicial proceedings and pertinent thereto"); *Andrews v. Gardiner,* 224 N.Y. 440, 445, 121 N.E. 341, 342 (1918) (Cardozo, J.) (same). "The test of 'pertinency' is extremely broad and embraces 'anything that may possibly or plausibly be relevant or pertinent with the barest rationality, divorced from any palpable or pragmatic degree of probability.'" *Aequitron Med., Inc. v. Dyro,* 999 F.Supp. 294, 298 (E.D.N.Y.1998) (quoting *O'Brien v. Alexander,* 898 F.Supp. 162, 171 (S.D.N.Y. 1995)); *see also Singh v. HSBC Bank*

4. The tort of injurious falsehood consists of "the knowing publication of false matter derogatory to the plaintiff's business of a kind calculated to prevent others from dealing with the business or otherwise interfering with its relations with others, to its detriment." *Waste Distillation Tech., Inc. v. Blasland & Bouck Eng'rs, P.C.,* 136 A.D.2d 633, 634, 523 N.Y.S.2d 875, 877 (2d Dep't 1988).

5. To successfully plead a claim for libel under New York law plaintiff must allege the following five elements: (1) a written defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant;

(3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff. *See Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 145 (2d Cir.2001). When a written statement "tends to disparage [plaintiff] in the way of his office, profession or trade," *Davis v. Ross,* 754 F.2d 80, 82 (2d Cir.1985) (emphasis omitted) (quoting *Nichols v. Item Publishers,* 309 N.Y. 596, 601, 132 N.E.2d 860, 862 (1956)), it constitutes libel *per se,* in which case plaintiff's compensable injury is presumed. *See Meloff,* 240 F.3d at 145 (citations omitted).

*USA,* 200 F.Supp.2d 338, 340 (S.D.N.Y. 2002).

"The determination of the question of privilege is a question of law, and if it be determined that the language used was not impertinent, the privilege is absolute." *People ex rel. Bensky v. Warden of City Prison,* 258 N.Y. 55, 60, 179 N.E. 257, 259 (1932). It is beyond doubt that the statements made by defendants in the Cancellation Petition were pertinent to the Cancellation Proceeding. Defendants petitioned the Board to cancel plaintiff's OLD ARMY mark pursuant to 15 U.S.C. § 1064(3), which provides that a petition to cancel the registration of a mark may be filed when the mark's "registration was obtained fraudulently." 15 U.S.C. § 1064(3). Having commenced a proceeding to cancel plaintiff's mark based on fraudulent registration, defendants proceeded to specify in their Cancellation Petition precisely which of the statements made by plaintiff in his application to register the OLD ARMY mark were false. Indeed, the Court finds it hard to imagine statements that may have been more pertinent to the cancellation proceeding brought on the basis of fraud than those detailing the allegedly fraudulent aspects of plaintiff's registration application.

 Having fully satisfied itself that the statements made by defendants were pertinent to the Cancellation Proceeding, the only issue left for the Court to decide is whether the Cancellation Proceeding was quasi-judicial in nature. An administrative proceeding is considered quasi-judicial when it is "adversarial, result[s] in a determination based upon the application of appropriate provisions in the law to the facts and [is] susceptible to judicial review." *Park Knoll Assocs. v. Schmidt,* 89 A.D.2d 164, 171, 454 N.Y.S.2d 901, 906 (2d Dep't 1982), *rev'd on other grounds* 59 N.Y.2d 205, 451 N.E.2d 182, 464 N.Y.S.2d

424 (1983). New York courts have extended the privilege with respect to the statements made in judicial and quasi-judicial proceedings to a wide array of proceedings held before administrative agencies. *See, e.g., Bleecker v. Drury,* 149 F.2d 770 (2d Cir.1945) (privileged statements made before the New York State Industrial Board); *Wiener v. Weintraub,* 22 N.Y.2d 330, 239 N.E.2d 540, 292 N.Y.S.2d 667 (1968) (privileged statements made before the grievance committee of the New York City Bar Association); *Harms v. Riordan–Bellizi,* 223 A.D.2d 624, 636 N.Y.S.2d 839 (2d Dep't 1996) (privileged statements made before the New York City Department of Transportation); *Allan & Allan Arts Ltd. v. Rosenblum,* 201 A.D.2d 136, 615 N.Y.S.2d 410 (2d Dep't 1994) (privileged statements made before a Zoning Board of Appeals); *Herzfeld & Stern, Inc. v. Beck,* 175 A.D.2d 689, 572 N.Y.S.2d 683 (1st Dep't 1991) (privileged statements made before the Department of Enforcement of the New York Stock Exchange); *Julien J. Studley, Inc. v. Lefrak,* 50 A.D.2d 162, 376 N.Y.S.2d 200 (2d Dep't 1975) (privileged statements made in an affidavit submitted to the New York State Department of State in connection with a real estate license revocation proceeding).

A cancellation proceeding before the Board involves the filing of a petition and an answer. *See* 37 C.F.R. §§ 2.111, 2.114. The parties are entitled to conduct discovery, submit trial testimony and evidence, file motions, and may request oral argument to be heard by a panel consisting of at least three members of the Board. *See* 37 C.F.R. §§ 2.120, 2.121–125; 2.128–129. The proceedings are governed by the Federal Rules of Civil Procedure, *see* 37 C.F.R. § 2.116, and the Federal Rules of Evidence, *see* 37 C.F.R. § 2.122. The parties may appeal the Board's decision to the United States Court of Appeals for the

Federal Circuit, or bring a civil action in a United States District Court. *See* 15 U.S.C. § 1071.

Although, to the Court's knowledge, no New York court has had the occasion to consider the question of whether a cancellation proceeding before the Board is quasi-judicial in nature, at least two other courts have held so. In *Ball Corp. v. Xidex Corp.*, 967 F.2d 1440 (10th Cir.1992), the Tenth Circuit Court of Appeals found that a proceeding before the PTO is quasi-judicial in nature, holding that "private lawyers are entitled to absolute immunity from charges of defamation based on statements in the quasi-judicial setting of PTO proceedings." *Ball*, 967 F.2d at 1445. More recently, an Ohio Federal District Court held that the Board was a quasi-judicial tribunal and extended the protection of privilege to the statements contained in a petition for cancellation filed by the defendant in that case. *See Baldwin v. adidas America, Inc.*, No. C2–02–265, 2002 WL 2012562, at *3 (S.D.Ohio July 29, 2002).

Having carefully considered the decisions of the courts described above, as well as the nature and the various features of a cancellation proceeding before the Board, the Court is satisfied that such proceeding is quasi-judicial—it is adversarial in nature, it involves the application of appropriate legal provisions to the facts, and it is subject to judicial review. Because the Court has determined that defendants' statements made in the Cancellation Petition were pertinent to the quasi-judicial proceeding in which they were made, the Court must hold that such statements were entitled to the protection of privilege. Accordingly, plaintiff's claims for injurious falsehood and libel *per se* arising from defendants' statements must be dismissed.

## CONCLUSION

Based on the foregoing, defendants' motions to dismiss the 2003 Complaint and the 2004 Complaint shall be and hereby are granted. The Clerk of the Court is hereby directed to close the above-captioned actions.

**It is SO ORDERED.**